## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Jose Rodriguez-Aguilar, being first duly sworn, hereby depose and state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2022. The FBI has jurisdiction over offenses that occur in the special aircraft jurisdiction of the United States.

2.    I write this affidavit in support of complaints against Alexander Michael Dominic MacDonald alleging a violation Title 49, United States Code, Section 46504 and Title 18, United States Code, Section 113(a)(4). I have obtained the information contained in this affidavit from my own investigation and from my discussions with and review of investigative reports and documents prepared by other FBI Special Agents and members of the U.S. Customs and Border Protection and the Bangor Police Department.

## STATEMENT OF PROBABLE CAUSE

4.    At approximately 9:55 am (EST) on March 1, 2024, the FBI received word that United Airlines Flight 883 from London, England to Newark, New Jersey, reported a passenger was non-compliant and that the captain of the flight had decided to divert the flight to Bangor International Airport ("BIA"). I proceeded to BIA to investigate further and was joined by other FBI Special Agents. Upon arrival, I learned that there were approximately 160 passengers on board and 10 crew members.

5.    I learned the following from speaking with FBI Special Agent Alex

White, who was told the following in substance from the captain of the aircraft:

A.   The flight was United Airlines Flight 883. Flight 883 departed London (LHR) to Newark, N.J. at approximately 0800 GMT with 160 Passengers and 10 crew members on board.

B.   At approximately 1330 GMT, the Captain was on his break outside the cabin when he was awoken by a flight attendant (FA1). FA1 informed the Captain that there was an unruly passenger in the rear of the aircraft. The Captain immediately returned to the cabin to assess the situation. The information regarding the passenger's conduct was relayed to him by a second flight attendant (FA2). The passenger was identified as Alexander MacDonald. The Flight Purser attended to the situation.

C.   At the time the incident began, the Captain was communicating with Moncton Air Traffic Control in Nova Scotia. Shortly after the incident began, Flight 883 passed into United States airspace and the Captain began to communicate with Air Traffic Control in Boston, Massachusetts.

D.   The initial report that the Captain received was that MacDonald was being unruly and physically combative. The Captain declared a level 2 unruly passenger because of MacDonald's conduct. The Captain continued to get reports of that MacDonald could not be kept restrained and continued to be physically combative. The flight Crew and two passengers were attempting to keep him restrained.

A.   At approximately 1415 GMT, the Captain made the decision that MacDonald's conduct was a threat to the safety of the crew and passengers. Furthermore, the Captain believed that continuing the flight to Newark was too great of a risk. The flight attendant did not specifically state that MacDonald was a threat to life. However, in the totality of the circumstances, the Captain believed that MacDonald represented a threat to his aircraft.

6.   I learned the following from speaking with the Flight Purser (PF):

A.   PF heard a passenger (MacDonald) arguing loudly with his girlfriend. PF approached the passenger and kindly asked him to lower his voice as not to disturb the other passengers   Although he initially complied, a few minutes later, PF heard loud yelling, this time from the back galley.

B.   When the PF got up from break to see what was going on, he saw the same aggressive passenger yelling at one of the flight attendants. The PF stood between the passenger (MacDonald) and the attendant, and had the attendant go to the front of the plane. The PF tried to calm down the passenger, but the passenger would not listen and continued to be verbally

and physically aggressive, asking the PF if he would like to "have a problem?" and threatening to "mess up the plane," and also placing his hands of PF's shoulders as he backed PF into the corner.

C.     With the assistance of another passenger asked to help the crew, the PF managed to get MacDonald restrained in flex cuffs. PF continued to attempt to calm MacDonald without success. MacDonald continued to be non-compliant and could not be retrained in the crew rest seat he had been placed in. The PF determined that the plane needed to be landed for the safety of the crew.

7.     In addition, responding agents interviewed additional passengers who reported seeing flight attendants responding  and who assisted the flight attendants in restraining MacDonald. These witnesses confirmed that MacDonald continued to be very verbally and physically aggressive even after he had been restrained in flex cuffs.

I, Jose Rodriguez-Aguilar, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information and belief, and that I make this oath under pains and penalties of perjury.

Dated: March 1, 2024

_____
Jose Rodriguez-Aguilar
Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED before me
This 1st Day of March, 2024.

_____
Lance E. Walker
United States District Judge